Case number 22-1963, Hattie Tanner v. David Walters, et al., oral argument not to exceed 15 minutes per side. Mr. Bryant, you may proceed for the appellants. Good morning, and may it please the court, Joel Bryant for defendant appellant David Walters. I'd like to reserve four minutes for rebuttal if I may. Noted. Thank you. Your honors, this case has a long and difficult history, but the issues that bring us before you on this appeal are straightforward. Hattie Tanner, says former police officer Walters, fabricated inculpatory statements, and his doing so led to her being wrongfully convicted of murder. She sued Walters for malicious prosecution and fabrication of evidence, and Walters' summary judgment motion based on qualified immunity was denied. This court, however, has said over and over that to overcome qualified immunity in a fabrication of evidence case under section 1983, the plaintiff must make a substantial showing that corroborates a culpable mental state, and here that means that the officer acted either intentionally or with reckless disregard of the truth. That's the rule this court established in Bakilian, that it has reiterated in cases like Newman, Butler, Scott, many others cited in our briefs. Why isn't that met? I mean, the fact dispute here is one that just relates to what really happened. I mean, you literally have a he said, she said debate, and if she's right, why isn't the mental state met? Your honor, because this court has repeatedly said that a plaintiff can't rely on their own denials, they can't simply present evidence contradicting what the officer reported, either in testimony or most of the cases are warrant or probable cause affidavits. They have to have something else, some substantial showing. Help me out with what you mean by that. The individual gets up and said, I never admitted it. I never admitted the knife looked like mine. I never admitted I was there. And the officer testifies, and this is what we now know he did, said the opposite and all of that. Why wouldn't a jury be able to decide, well, gee, if she's telling the truth, this is quite problematic. Because this court has made very clear that police officers are entitled to qualified immunity when they're merely negligent. And what this court wrote in Butler is that police officers, quote, can make mistakes and yet remain protected by qualified immunity. And that this court, quote, may not infer bad motive, absent even a scintilla of material facts supporting that inference. So when that standard has been met, when a substantial showing has been made, you have cases like Wesley v. Campbell, which is 864 F3rd 433. It's cited in the Butler case. The officer there swore out a warrant affidavit in a case where a minor claimed to have been sexually assaulted. What the officer left out was that the minor had mental health issues, there had been a negative medical exam, and the officer had been working to try and corroborate the allegations and had not been able to. Counsel, explain to me what's negligent about Mr. Walters saying that Ms. Tanner admitted that the knife was hers when the transcript and the audio doesn't indicate that. So what's negligent about that? Because we would concede for purposes of this appeal, Your Honor, that Walters got it wrong, that he misunderstood what Hattie Tanner was trying to say. But it's important to realize that Walters never had the transcript. He didn't request it, and he never actually saw the transcript until he was impeached with it at the preliminary hearing in the State District Court. He was relying on his own memory. He didn't have the benefit of the audio or the transcript. Because although he was the initial lead detective on the case, when he was promoted to sergeant, he turned that case over to Detective Adams, who worked the case for years. Walters was not involved in procuring the affidavit that ultimately led to the charges. He was not the lead investigator at that time. He was simply called at the preliminary hearing and asked to testify as to his recollection. You're saying he didn't have access to the transcript. Did he have access to the audio? I mean, he took the interview. I mean, he conducted the interrogation. So wouldn't he have had access to the audio at that point and at every point in the future? He would have had access to the audio when he was the investigator on the file, Your Honor. But five years later, when he was called to testify at the preliminary hearing, he was not actively involved in the case. And he was not asked to listen to the audio. He was asked to testify based on his memory. Did he make reports indicating that she admitted that the knife was hers? I understand he's called five years later. But at the time when he conducts the interrogation, does he make a report saying she made these admissions both in the first and second interview? His notes of both the May 24th, 1995 interview and then the June 7th, 1995 interview report that she made those inculpatory statements. And I think we all understand that the most important of those is his recollection that she admitted that the knife was hers. I'm still struggling with how that's negligent, how that would be considered negligent under the circumstances. He makes the notes. He has, at that time, he has access to the recordings. I assume he doesn't have access to the transcripts, but how is that negligent? Well, to clarify, he definitely doesn't have access to the transcript because the transcript wasn't created until Detective Adams asked for it years later. And there's no evidence in the record that he went back and listened to the recordings. He made notes immediately after the interviews. And he, for purposes of this appeal, we would concede he made a mistake. He misheard or misunderstood what Ms. Tanner was trying to tell him. And I think when you listen to that audio, and if you listen to it just once at normal speed without pausing it and without rewinding on all the things we can do now with digital audio, if you experience that interview, the way that Walters experienced it, listening to it one time, it's impossible to come to the conclusion that it was anything other than negligence. Let me explore that with you. When you say it's impossible to say it was anything other than negligence, we accept, you know, Ms. Tanner's testimony, that she didn't make the statement. Isn't it true that Officer Walters or Detective Walters also knew that she, that the actual murder weapon was a knife that was not a pocket knife? It didn't bend, in other words. It was a knife that had the four-inch blade that just stuck up. And that to the extent that she said that she had any knife, that the only knife that she indicated that she had was one that did bend. Is that correct? I think that's largely correct and I want to amplify it. Okay, so you can amplify it, but let me ask my next question, which is that being the case, when you say that the only evidence that is there is her denial, isn't that incorrect? Because there's additional evidence that this was not the knife. Because the knife that she described doesn't match the knife that was actually used in the murder. So there, I think... Let me simplify my question. Is there additional evidence in the record that this was not the knife? Well, the knife that Ms. Tanner was shown during the interview was the murder weapon. There's no other knife was ever recovered. Nor is there any other knife in the record other than the straight-bladed knife with the notched tip. Well, that's not the question, though. The question is that you're saying that your client's belief was that she admitted that it was the knife. While at the same time saying that he understood that the knife that she described was a knife that was a bendable knife. Those two things don't match. Right, and this came out at the preliminary hearing, Your Honor, where Walters was confronted with the second portion of the transcript where Ms. Tanner describes having a folding knife. Well, that's the transcript, but he was present for the actual interview. The transcript is just a recording of the actual interview, so he heard this as it was being said, correct? Correct. And what Mr. Walters' recollection was, was that initially she had acknowledged, that looks like my knife. And later in the interview, as he acknowledged under cross-examination at the preliminary hearing, yes, subsequently in the interview, she claimed it wasn't her knife. He didn't withhold that when he was examined at the preliminary hearing. He acknowledged, he said first she made these inculpatory statements, and yes, he agreed. Later, she denied that it was her knife. So unlike the officers in Wesley or Gregory or King v. Harwood, 852 F3rd 568, where the officer in that case swore out an affidavit saying I have a murder victim that was killed by a .22 caliber weapon, and the suspect has .22 caliber bullet holes in her kitchen floor. And that officer omitted the fact that there was a ballistics test that ruled out a match between the weapons. He also left out the fact that the alleged perpetrator had only one leg and no prosthesis, and could not possibly have dragged a body 40 miles and dumped it in a river. Those are the sorts of things that this court has accepted as a substantial showing corroborating the evidence. It's not an inculpatory mental state. Do you have some additional that you might want to wrap it up with? I'll just make one additional point, Your Honors, which relates to the preclusive effect of the State District Court judgment. It's a unique feature of Michigan criminal procedure, but under People v. Yost, the Michigan Supreme Court case cited in our brief, that State District Court's determination of probable cause did not merge into the State Circuit Court proceedings, and therefore it has preclusive effect. Hattie Tanner's remedy was to file a motion to dismiss challenging probable cause in the Circuit Court. She did not do that, and therefore that probable cause determination does have preclusive effect, and does mean that the malicious prosecution claim, which is one of the two claims that's still active, must be dismissed. What about Pete v. City of Chicago, which seems to indicate that the probable cause determination does not have preclusive effect if there's evidence that the malicious prosecution claim is based on the officers supplying false information? That case did not involve a State District Court determination that had a separate status from the State Circuit Court proceedings under Michigan law. Are you really going to take the position that probable cause determinations are binding, even when based on fraud? The evidence that constitutes the alleged fraud here, Your Honor, is exactly the evidence that Ms. Tanner's counsel brought out on cross-examination when he confronted Walters with the transcript. And the other thing that I want to point out before... I'm just making the point, it doesn't really seem like an independent claim. It seems to all come back to the same fundamental issue on appeal. Your Honor, I agree with you that what has been pled as malicious prosecution and fabrication of evidence is the same claim at heart. This Court's jurisprudence recognizes two separate claims under two separate constitutional theories, which I'd be happy to discuss with the Court, but I know that I'm past my time here. I would ask the decision below be reversed, and I'll reserve the rest for rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honors. Wolf Mueller on behalf of the Plaintiff Appellee Hattie Tanner. First, I just want to address the issue of collateral estoppel. I've kind of worked backwards since we were talking about those questions. Obviously, under Peterson v. Hames, once a conviction is vacated, we don't have collateral estoppel, preclusive effect. The one issue that Judge Sutton mentioned just now is it goes back to Franks v. Delaware. You can't rely on a judicial determination of probable cause where it is based on false statements, and in this case, false statements are a case fabrication, and in Mills v. Barnard, you don't understand. The Sixth Circuit in 2017 said fabrication of evidence is the prototypical example of malicious prosecution. So for that, I just wanted to address that. What about counsel's argument that kind of the bifurcation of proceedings in Michigan courts where probable cause is determined at the district court level, and then if the case is bound over, it goes to circuit court, means that that determination in the district court somehow is not merged with the judgment at the end of the case? I think as the district court said in our case, I don't see any authority that supports that. It is not an independent determination. Once you have a determination of probable cause, it depends on how it was arrived at. And if it's based on fraud, fabrication of evidence, false statements, then once the conviction is vacated, we're arguing, remember, under collateral estoppel, we have to have an identity of the issues. And as the district court found in this case, we're not talking about simply probable cause. We're litigating in this case the false statements that were in the report and in the preliminary exam testimony that led to the probable cause finding by the judge. It is absolutely clear when you look at the preliminary exam transcript that the prosecutor relied on Walter's statements about, these are essentially confessions is what they amount to. It was her knife. She said her fingerprints would be on it. She said she was at Barney's Bar at the time of the murder. Not in the bar, but at least in the parking lot. So all of those are the false statements that led to the finding of probable cause. The district court judge in the criminal case when he bound the case over said, I find Walter to be credible. And went through the litany of statements that Walter did. So for that reason, we don't have an identity of the issues here. We don't have a collateral estoppel issue. As to the fabrication, I want to talk about the knowing issue. In this case, Defendant Walter has testified, and it's Record Evidence 99, page 1059. He said, if she told me that hers was a folding knife, and we clearly know it's not a folding knife, he admitted, then that is a lie. If I said she said it was her knife. She didn't just say it was her knife. We're not talking about just a dispute over hearing a tape and now saying could she have said it was not her knife versus her knife. She said it has a button. My knives have buttons. That's how you push them. That's how they fold up. They go up. That's a whole different issue. And counsel was mistaken, I think, when he mentioned in the preliminary exam. They didn't have a transcript in the preliminary exam. They didn't have the audio. He testified as to what he said. He was present in the conversation with Hattie Tanner. It's more akin to Jackson versus Cleveland where they said if you are the person who signs the report recounting what happened in an interview, you were in their interview. And so that goes to fabrication. That goes to... What if it was just misunderstanding? I mean, is that possible? Is your point that it's never a misunderstanding because the officer is not sure what someone has said? They've got to ask the person to repeat it? It does seem like you could have a misunderstanding is all I'm getting at. Your Honor, all due respect, he said she told me it was her knife. What was left out is the rest of it. She said my knife has a button. My knife is a folding knife. This is not a folding knife. My knife, if it was my knife, it would fold. That's not my knife. So it's more than just that question of she admitted, and it was hard to hear because of how she speaks, she said it was her knife versus not her knife. She explained why it was not her knife. And so that's a very important distinction and the additional evidence. It is not her knife because her knife folds. And she's testified at her deposition she had a one-inch knife. That's the knife she carried around, not a four-inch blade. So that is completely different. The other important thing we need to talk about when we say knowing the statements, we're talking about two different things. May 24, the audio interview, June 7, Hattie Tanner has testified, he didn't ask me any questions on that ride down to Paw Paw to the polygraph. We had an hour and a half ride. He didn't ask me any questions. That's Record Evidence 101, pages 1190 and 1191. So if he's recounting a conversation that she says never occurred, then what he is saying she told him has to be false. It's not a mistake. What do we do about your opposition's argument that essentially we can't just rely on your client's denials regarding what took place during that interview? I think at the end of the day we have a question of fact, and it kind of goes to my first argument that I'm not even sure, frankly, that this court has jurisdiction over this appeal, and the reason being, they haven't accepted Hattie Tanner's statements and denials carte blanche. What they say now is, well, we'll say that he made a mistake. That's the same argument they made in Gregory v. Louisville when the technician Katz said, they argued, maybe she made a mistake on analyzing the hair. And the court said, the Gregory court said, you're now arguing a question of fact. So that warrants a denial. Don't we always have jurisdiction as long as the appellant accepts that all the inferences must run in favor of the non-movement, your client? And I thought he had said that. Maybe we can clarify that in rebuttal. I thought it was the point, it's just, all you've got to do is concede that you got it on the inferences in favor of the plaintiff in this case. Counsel for Mr. Walter said they will concede as to the May 24 statement about whether it was her knife or not her knife, that maybe he misheard. Not the rest of it. They haven't accepted that she never said she was in Barney's bar to anybody. She never said that the fingerprints would be on the knife. They haven't accepted that. They basically trotted out the same issues that were in summary judgment. For the purposes of this appeal, they haven't conceded that everything Hanny Tanner says is true. So what they did concede was that maybe he misheard. Maybe she said it wasn't her knife. But that was just a mistake. That's a whole different issue. Johnson v. Jones doesn't mean that the defendant has to say I moved. To say they are claiming that the officer misheard, I don't understand how that's a Johnson v. Jones problem. Conceding what she said or what the evidence shows, she gets the inferences, doesn't mean you have to concede that that proves there's a tribal issue of fact. That's what our job is. We figure out if there really is a tribal issue of fact. I understand, but I don't think that, all due respect, I don't think that they've conceded everything in the light most favorable to the plaintiff. And that's where we have those questions of fact. I will say this, they mentioned Butler, the Butler decision, which was a search warrant case. Can I ask you one other question? Since you went down this road, forgive me, but this is a little bit of a hobby horse for me, so just be polite and forgive me. I've never understood why plaintiff's counsel led Johnson v. Jones. I've just never gotten it. Now I'll explain what I mean by this. If you can win without worrying about all of that, what you will get is a victory from the Sixth Circuit that says there is a tribal issue of fact over this qualified immunity case. That means if you get a jury verdict in your favor, there's nothing to appeal. The Sixth Circuit will already have said on this record there is a tribal issue of fact over intent, recklessness, knowing, malicious prosecution, etc., whatever the question is. I'm a little puzzled. If we go the other route, if we go the route you're suggesting now, Johnson v. Jones, what you get from us is zero on whether there's a tribal issue of fact. All you get is we have no jurisdiction. And if we have no jurisdiction, that of course means the appellate court's view of whether there's a tribal issue of fact would have to come after the jury trial. So I guess I'm a little puzzled as a matter of strategy why you want that. I mean, don't you have the courage in your convictions that there is a tribal issue of fact and you can show that to us? And if you do, don't you want us to say that? One, I do have a conviction of my beliefs in Hattie Tanner's position. Let me just answer that because I know you've addressed that in another opinion that I've read or an oral argument. As a matter of just principle, if I were to file a motion to dismiss, for example, for lack of jurisdiction, frankly, in my opinion, that just kicks the can down the road. I brought that up and I bring that up here. The court can decide based on these questions of fact. We don't have jurisdiction. And I understand that we will have to address it later. But as a practical matter, as the court knows, there are plenty of opportunities to resolve a case before trial. It's still an appellate issue. Option A, Johnson v. Jones victory. Option B, material fact dispute victory. Which is your preference? I prefer, obviously, a ruling that affirms the trial court decision, that qualified immunity is denied. I do know, though, as a legal matter, there is the issue of jurisdiction that has to be addressed if they won't accept the facts as the plaintiff states. And I don't believe in this case, certainly not all the facts. They've conceded one little point and then backslide to it's a mistake, it's negligent. So I believe that in this case, certainly my preference would be the court should say these are all questions of fact and should affirm the trial court decision. Because we do have a he said, she said. We do have additional evidence. And in this case, frankly, it's clear that without Walter's testimony of what would constitute admissions by Hattie Tanner, we don't have probable cause. We have a fabrication. I'm sorry to interrupt you, but I just want to clarify things. So if we go the route of saying that there is a tribal issue of fact. And it is on this issue of whether or not he acted knowingly and intentionally. Can you just clarify, or maybe streamline for us, what the evidence in the record is which could support a jury verdict that his actions were knowing and intentional? I think by his own admission, as I cited his deposition testimony. Remember, he says, he admits, if she told me the knife folded up and I said it was her knife, she told me it was her knife, clearly we know the knife doesn't fold up. So it couldn't be her knife, if you read that section of her testimony. He admits, then that is a lie. So that lie is a knowing false statement. And if the jury believes Hattie Tanner, he never asked me any questions on June 7th on this ride that he testified to at the preliminary exam. He never asked me any questions. That means whatever he says she told him is a knowing statement because that conversation didn't occur. So that's what we have. Is her saying that he didn't ask me any questions the same as saying that we had no conversation? In other words, can't she be in the car and just chatting it up and the officer says, you know what, I'm not going to go down this line, but whatever she says, I'm just going to take it all in. Her testimony was we didn't have a conversation. I phrased that he didn't ask me any questions. No, there wasn't just a answer, answer, answer, answer, answer, no question. Not a stream of consciousness. We didn't have a conversation in the car. He says they did. That's a question of fact. And the knowing part is because if they didn't have a conversation, then whatever he's saying she admitted to couldn't have happened. It has to be a knowing. A jury can infer that's a knowing misstatement. So I think from that standpoint, clearly where we have a question of fact as to fabrication that the district court found, we have Mills versus Barnard saying fabrication of evidence is the prototypical example of malicious prosecution. We don't have probable cause without this issue of the false statements. And I'll just kind of close up. I've got less than a minute. I wanted to close up with this. Part of the malicious prosecution is did he influence the initiation and continuation of the detention? As the district court found, his police reports, and as Judge Davis, you mentioned, his police reports recounted May 24 and June 7. They were the centerpiece of probable cause. And the prosecutor's affidavit, Cabot was his name, said I remember seeing reports of her statements. And I talked to the prosecutor. That's in part why we issued charges. So clearly when you have an admission by a suspect, that forms and influences the prosecutor's decision. And then the continuation of the detention was based on his preliminary exam testimony, which I stated. If you look at Judge Durham's opinion, granting the bind over, it's all based on Walters. So I say I'm out of time. Thank you very much. Unless anybody has any questions. Any questions? Chief Judge Sutton? Judge Matthews? Thank you for your time. All right, Mr. Bryant. Thank you, Your Honors. Before you get started, do you concede the summary judgment standard that we have to run all the influences in favor of the plaintiff? Yes, but what we're challenging is a legal aspect of this decision. Once we make that concession, has the substantial showing been satisfied, which the Bunkley case cites in our brief. And I don't think the case that Your Honor, Chief Judge Sutton, referred to is contradictory to this. Once we concede that, yes, there may have been a misreport or that Hattie Tanner's claim or Hattie Tanner's statement was not this is my knife, we can still argue, and this court still has jurisdiction to decide whether the substantial showing required under the Pecalion rule has been made. So on that substantial showing standard, can you point us to a case that dealt not with affidavits, which we know when officers are swearing out affidavits, sometimes it's done very quickly. They're trying to get it to the magistrate judge or whoever the judicial officer is going to be. Have there been any cases since Valkyrie, and I might be mispronouncing it, that have dealt not with that situation, but with a situation where we have someone who's testifying on the stand, who presumably has been prepared and had an opportunity to review their notes and to go over all of the evidence. It seems to me that that might be a distinguishing factor that would call into question whether or not this substantial showing actually applies under these circumstances. It's a very good question, because I don't think there's any case cited in any of the briefs file that deals with preliminary examination testimony as opposed to affidavits. And what you did not hear is any citation to the record that the assumption Your Honor is making that Walters had this opportunity to be prepared actually happened, because that's not in the record. Well, he would at least have an opportunity to look over his own reports and notes, would he not? Well, he may or may not, but we're limited to what the record was established in this case. I think one of the things we mentioned in our brief is the district court inappropriately looked at the Sixth Circuit record in the habeas case for its view of the underlying facts. And this court should look at the record in this case. And the record in this case is not that David Walters reviewed his notes and prepared. And I would invite the court to look in the record at 95-2, which is the preliminary examination transcript. And I think you'll find Detective Walters explaining that he had not seen the transcript before and that it was a part of the preliminary examination. It's also worth mentioning that although Ms. Tanner's counsel points out that in her deposition she said, well, Walters didn't ask any questions on June 7th, at her deposition she also admitted telling Walters on June 7th that she had used can openers to sharpen knives, which would produce the similar result to the knife that we saw that Walters questioned her about. And I also want to point out that Assistant Prosecutor Cabot did not say that he relied on reports of her statements. If you look at his affidavit, he said he relied on the transcript. I also want to point, Your Honors, to cases like Butler, Newman, and Scott, where this court either affirmed qualified immunity or reversed the denial of qualified immunity, where there were factual disputes. In Butler, the officer admitted, because another officer said, no, that is the wrong address. The affidavit said, a drug dealer's associate went to the plaintiff's house. That was wrong. There was a factual question and this court said qualified immunity. In Newman, two police officers disagreed as to what a witness had said. This court said, at most, negligence, qualified immunity. In Scott, the affidavit said that the plaintiff's, the criminal suspect's fingerprints had been found inside a store that had been broken into. In fact, there was contrary evidence the fingerprints might have been found outside, and the affidavit omitted the fact that two matching prints for unknown persons had also been found. This court said qualified immunity applies. That is the situation we're in, even accepting the inferences. This court has said, when the inferences are consistent with negligence, and there's nothing to move the needle from negligence to recklessness or intent, then an officer is entitled to qualified immunity. Because if we don't have that protection, any time that a prosecution doesn't end in a conviction, or in this case the conviction is ultimately overturned, qualified immunity is not going to protect that officer from a fabrication of evidence claim. And that officers, as the court said in Butler, need to have breathing room to do their jobs. They're entitled to give testimony based on their memory and not be held to the standard that plaintiffs would impose. Again, I see that my time has gone. Thank you, your honors. I would ask the decision below be reversed.